IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| WILLIAMS MEDINA GALVEZ, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 1:11cv1351 (JCC/TCB) ) |
| AMERICLEAN SERVICES CORP., *et al.*, | ) ) ) |
| Defendants. | ) ) |

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on the parties' Joint Motion for Approval of Settlement Agreement [Dkt. 25] (the "Motion"). For the following reasons, the Court will deny the parties' Motion without prejudice.

### I. Background

This case arises out of Defendants' alleged violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

    A.    Factual Background

Defendants Americlean Services Corporation and Americlean Environmental Services, LLC (collectively "Americlean") provide duct cleaning and mold remediation services to customers in Virginia, Maryland, and the District of Columbia. (Am. Compl. ¶ 9.) Plaintiffs allege that the two

1

corporations are a single enterprise and constitute a "single employer" or "joint employer" as defined in the FLSA. (Am. Compl. ¶ 10.) Defendants Richard de Azagra and Charles de Azagra are officers of Americlean. (Am. Compl. ¶¶ 7-8.)

Plaintiffs Williams Medina Galvez and Adolfo Temoche Gerrasi worked for Americlean as field technicians, performing duct cleaning and mold remediation. (Am. Compl. ¶ 14.) Plaintiffs were required to report to work at the Americlean warehouse in Manassas Park, Virginia in order to load company vehicles with the required equipment before driving to their assigned worksites. (Am. Compl. ¶ 16.) At the end of the day, Plaintiffs returned the company vehicles to the Americlean warehouse and unloaded them. (*Id.*)

Americlean allegedly did not pay its employees, including Plaintiffs, for time spent driving to and from worksites and loading and unloading company vehicles. (Am. Compl. ¶ 17.) Plaintiffs allege that they generally worked approximately forty hours per week at their worksites, and thus this unpaid time constituted overtime that should have been paid at a rate of one and one half times their regular rates of pay. (Am. Compl. ¶ 18.)

Plaintiffs, along with many co-workers, allegedly raised this issue with Richard de Azagra on October 4, 2011. (Am. Compl. ¶ 19.) In response, Richard allegedly sent

Plaintiffs and their co-workers home for the day without pay. (*Id.*) On or about October 12, 2011, Richard assigned Medina Galvez to a new project, allegedly because Medina Galvez was "causing problems." (Am. Compl. ¶ 20.) Two days later, Richard allegedly told Medina Galvez he could return to his previous project at Quantico Marine Corps base, but only if he promised "not to cause any more problems." (Am. Compl. ¶ 21.) Plaintiffs allege that the "problems" referred to Medina Galvez's role in the October 4 meeting. (Am. Compl. ¶¶ 20-21.)

On November 16, 2011, Medina Galvez was again told that he was being assigned to a new project, this time by Charles de Azagra. (Am. Compl. ¶ 22.) Medina Galvez understood this to mean he would have fewer hours and thus less take-home pay. (*Id.*) Charles allegedly told Medina Galvez to report to work the following morning at 8:00 a.m. instead of the usual 7:00 a.m., the starting time for the project at Quantico. (*Id.*) Medina Galvez allegedly arrived at work at 7:00 a.m, and attempted to make his case as to why he should be allowed to continue working at Quantico. (Am. Compl. ¶ 23.) Charles allegedly refused to discuss the matter and instead fired Medina Galvez. (*Id.*) Plaintiffs allege that Medina Galvez's termination was in retaliation for his role in organizing co-workers to complain about unpaid compensation. (Am. Compl. ¶

24.)  Temoche Gerrasi resigned from Americlean in late January or early February 2012.  (Am. Compl. ¶ 25.)

      B.    <u>Procedural Background</u>

Plaintiff Medina Galvez commenced this action on December 14, 2011.  [Dkt. 1.]  On February 14, 2012, an amended complaint was filed, in which Plaintiff Temoche Gerrasi was added as a party.  [Dkt. 17.]  Plaintiffs allege violations of the minimum wage, overtime, and anti-retaliation provisions of the FLSA.  They also assert claims for breach of contract and quantum meruit.  As relief, Plaintiffs seek, among other things: (1) actual damages in the amount of all unpaid minimum wages and overtime; (2) an additional amount of liquidated damages equal to the unpaid minimum wages and overtime; (3) an award of consequential damages, including pain, suffering, and emotional distress; (4) an award of punitive damages; and (5) an award of Plaintiffs' costs and reasonable attorneys' fees.  Defendants answered the amended complaint on February 29, 2012.  [Dkt. 19.]

On May 1, 2012, the parties filed a Joint Motion for Approval of Settlement [Dkt. 25], attaching a fully executed settlement agreement [Dkt. 26-1].  The parties' Motion is before the Court.

**II.  Standard of Review**

Under the FLSA, "there is a judicial prohibition against the unsupervised waiver or settlement of claims."

4

*Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114-16, (1946)). Claims for FLSA violations can only be settled when the settlement is supervised by the Department of Labor or a court. *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005).

A proposed settlement should be approved if it reflects a reasonable compromise over issues actually in dispute. *See Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1210, 2009 WL 3094955, at *8 (E.D. Va. Sept. 29, 2009) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)). In assessing whether a proposed settlement is reasonable, adequate, and fair, the court should consider the following factors: "'(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs;' and finally, 'the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.'" *Poulin v. Gen. Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *1 (W.D. Va. May 5, 2010) (quoting *Lomascolo*, 2009 WL 3094955, at *10).

### III. Analysis

The parties' Motion fails to set forth sufficient facts and arguments that would enable the Court to evaluate the proposed settlement agreement for fairness. In addressing the probability of Plaintiffs' success on the merits, Defendants assert that they have "extensive payroll records which represented their efforts to pay employees fairly," while acknowledging Plaintiffs' contention that the "payroll records did not reflect the time they spent traveling to and from job sites." (Defs.' Mem. [Dkt. 26] at 3.) These vague and conclusory assertions are insufficient. *See Kianpour v. Rest. Zone, Inc.*, No. DKC 11-0802, 2011 WL 5375082, at *4 (D. Md. Nov. 4, 2011) (holding that it is not "sufficient for [defendant] to assert, in conclusory fashion, that an [FLSA] exemption applies -- particularly where . . . the complaint strongly suggests that it does not"). The parties must put forth a more detailed description of their respective positions.

The Motion is equally devoid of facts that would allow the Court to approximate Plaintiffs' potential recovery were they to prevail on the merits. Under the terms of the proposed settlement agreement, each Plaintiff will receive $6,500, half of which represents lost wages for the years 2009, 2010, and 2011, and half of which represents liquidated damages. (Defs.' Mem. Ex. 1 ("Proposed Settlement Agreement") [Dkt. 26-1] ¶¶ 6-

7.) However, the parties provide no information as to Plaintiffs' regular rates of pay or the number of hours Plaintiffs worked during the three years prior to the filing of the complaint for which they were allegedly uncompensated. Without such information (or at least reasonable estimates) the Court is unable to compare Plaintiffs' potential recovery with the amount of the proposed settlement and hence cannot assess whether the proposed settlement amount is reasonable. *See Kianpour*, 2011 WL 5375082, at *4 (denying settlement where parties failed to provide calculation of overtime hours). *Compare Lomascolo*, 2009 WL 3094955, at *15 (approving settlement where the proposed settlement agreement "describe[d] in detail the formula the Parties negotiated to determine the value of overtime worked by Plaintiffs").

The parties also fail to support the proposed award of attorneys' fees. "[T]he FLSA 'requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Poulin*, 2010 WL 1813497, at *1 (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)). In calculating an award of attorneys' fees, the Court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The*

*Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). The Court's assessment of reasonableness involves consideration of the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's*, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978).

Here, the parties have provided no declarations, invoices, or similar documentation that would allow the Court to perform a lodestar analysis and assess the reasonableness of counsel's hourly rate or the number of hours expended on the case. *See Poulin*, 2010 WL 1813497, at *1 (denying settlement, in part, because "[t]he parties have offered no justification underlying their request for an award of attorney's fees, much less the factual basis required for the Court to apply the lodestar analysis as a guide in determining the reasonableness [of] the requested attorney's fees").

Finally, the proposed settlement agreement contains a confidentiality provision. The provision provides, in pertinent part:

> The parties shall strictly maintain the confidentiality of the amount and fact of this Settlement Agreement and Release and any amounts offered or demanded by either party. The parties shall not disclose any information relating to the amount and fact of this Settlement Agreement and Release to any individual other than their respective tax advisors, counsel, and spouses, or as necessary to enforce compliance with this agreement. The parties agree that if any of them is asked about the claims, the Charge, or the Lawsuit by a person who was aware of the claims, Charge, or lawsuit prior to the execution of this agreement, he or she may state "the matter has been resolved" and may state nothing further.

(Proposed Settlement Agreement § 9(a).)

Other courts have held that confidentiality provisions in FLSA settlement agreements undermine the purposes of the Act. *See, e.g.*, *Poulin*, 2010 WL 1813497, at *2. Specifically, such agreements

> further[] resolution of no bona fide dispute between the parties; rather, compelled silence unreasonably frustrates implementation of the 'public-private' rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute. To further Congress's intent, the Department of Labor requires the employer of an employee covered by the FLSA to display conspicuously in the workplace a detailed notice of the employee's FLSA rights. By including a confidentiality provision, the employer thwarts the informational objective of the notice requirement by silencing the employee who has vindicated a disputed FLSA right.

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010). Adhering to this rationale, many courts have rejected proposed settlement agreements containing confidentiality provisions, finding them unenforceable and operating in contravention of the FLSA. *See Brumley v. Camin Cargo Control Inc.*, Nos. 08-1798, 10-2461, 09-6128, 2012 WL 1019337, at *7 (D.N.J. Mar. 26, 2010) (collecting cases). Here, the parties have cited no interests in maintaining confidentiality which would override the FSLA's policy of transparency. Furthermore, the confidentiality provision in this case is likely unenforceable, as the parties have not filed a motion to seal and the settlement agreement, if ultimately approved, will be publicly filed. *See Poulin*, 2010 WL 1813497, at *2 (citing *Head v. V. & L Servs. III, Inc.*, No. 6:08-cv-917, 2009 WL 3582133, at *3 (M.D. Fla. Oct. 27, 2009)). For these reasons, the Court declines to approve a settlement agreement which includes a confidentiality provision.[1]

---

[1] The Court is not opposed to the inclusion of Sections 9(b) and 9(c) of the proposed settlement agreement, which provide that Defendants agree not to disparage Plaintiffs and *vice versa*, so long as Section 9(c) specifies that Plaintiffs are not precluded from revealing the amount and fact of the settlement. The removal of Section 9(a) obviates the need for Sections 10 and 11.

## IV. Conclusion

For these reasons, the Court will deny the parties' Motion without prejudice.

An appropriate Order will issue.

|  |  |
|---|---|
| May 15, 2012 | /s/ |
| Alexandria, Virginia | James C. Cacheris |
|  | UNITED STATES DISTRICT COURT JUDGE |