IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| WILLIAMS MEDINA GALVEZ, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )    1:11cv1351 (JCC/TCB) ) |
| AMERICLEAN SERVICES CORP., *et al.*, | ) ) ) |
| Defendants. | ) |

**M E M O R A N D U M   O P I N I O N**

      This matter is before the Court on the parties'
Amended Motion for Approval of Settlement Agreement [Dkt. 36]
(the "Motion").  For the following reasons, the Court will grant
the parties' Motion.

**I. Background**

      The factual background of this case is set forth in
this Court's Memorandum Opinion dated May 15, 2012 (Memorandum
Opinion [Dkt. 30] ("Mem. Op.") at 1-4) and will not be recited
in detail here.  To summarize, Plaintiffs Williams Medina Galvez
and Adolfo Temoche Gerrasi allege that their former employer,
Defendants Americlean Services Corporation and Americlean
Environmental Services, LLC (collectively "Americlean") failed
to pay them wages for all hours worked, in violation of the Fair
Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.  The

1

parties eventually reached a settlement agreement and filed a joint motion for approval of settlement [Dkt. 25], which the Court denied without prejudice on May 15, 2012, [Dkt. 31].  The Court requested additional information pertaining to the strength of the parties' respective positions, Plaintiffs' potential recovery were they to prevail on the merits, and the proposed award of attorneys' fees.  (Mem. Op. at 6-8.)  The Court also objected to a confidentiality provision in the parties' proposed settlement agreement.[1]  (Mem. Op. at 9-10.)  On June 5, 2012, the parties filed an Amended Motion for Settlement Approval.  [Dkt. 36.]

The parties' Motion is before the Court.

## II.  Standard of Review

Under the FLSA, "there is a judicial prohibition against the unsupervised waiver or settlement of claims." *Taylor v. Progress Energy, Inc*., 493 F.3d 454, 460 (4th Cir. 2007) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114-16, (1946)).  Claims for FLSA violations can only be settled when the settlement is supervised by the Department of Labor or a court.  *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005).

A proposed settlement should be approved if it reflects a reasonable compromise over issues actually in

---

[1] The parties have stricken the offending provisions of the proposed settlement agreement, and thus this is no longer an issue.

dispute.  *See Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1210, 2009 WL 3094955, at *8 (E.D. Va. Sept. 29, 2009) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).  In assessing whether a proposed settlement is reasonable, adequate, and fair, the court should consider the following factors:  "'(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs;' and finally, 'the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.'"  *Poulin v. Gen. Dynamics Shared Resources, Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *1 (W.D. Va. May 5, 2010) (quoting *Lomascolo*, 2009 WL 3094955, at *10).

### III. Analysis

#### A.  Reasonableness of Proposed Settlement Agreement

The Court has reviewed the parties' proposed settlement agreement and accompanying submissions and will now address each factor in turn.

#### 1.  The Extent of Discovery

Discovery in this case commenced on February 1, 2012 and was set to close on May 11, 2012.  [*See* Dkt. 10.]  The Court

3

was first informed that a settlement had been negotiated on May 1, 2012, with just ten days of the discovery period remaining. [*See* Dkt. 25.]  Prior to that time, Defendants produced nearly 4,000 pages of documents to Plaintiffs.  Plaintiffs deposed Defendant Richard de Azagra for approximately seven hours. While Plaintiffs had not yet deposed their coworkers, Plaintiffs' counsel spoke with many of them on the telephone subsequent to filing suit.  The parties also obtained a preview of likely trial testimony while litigating the facts surrounding Plaintiff Medina Galvez's termination before the Virginia Employment Commission and the National Labor Relations Board. As such, "it is clear that the [p]arties had adequate time to conduct sufficient discovery to 'fairly evaluate the liability and financial aspects of [the] case.'"  *Lomascolo*, 2009 WL 3094955, at *11 (quoting *A.H. Robins Co.*, 88 B.R. 755, 760 (E.D. Va. 1988)).

        2.  Stage of the Proceedings

        As noted above, the parties have completed substantial discovery in this case, which they represent has been costly. The Court concludes that the "[t]hese proceedings [have] advanced to a stage sufficient to permit the [p]arties and their counsel to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations." *Lomascolo*, 2009 WL 3094955, at *11.   The

4

settlements, if approved, would enable the parties to avoid the time and expense of further litigation, whether through summary judgment or trial.

### 3. Absence of Fraud or Collusion

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Id.* at *12 (citation omitted). Here, there is no evidence that the parties' settlement is the product of fraud or collusion. Rather, the parties agreed to the settlement after engaging in informed, arms-length negotiations.

### 4. Experience of Counsel

Counsel representing both Plaintiffs and Defendants are competent and well-experienced in federal court litigation in general and FLSA cases in particular. FLSA cases account for forty percent of the current caseload of Plaintiffs' counsel. Moreover, both of Plaintiffs' attorneys have litigated cases involving FLSA claims in this District. *See Tapia v. CSI Constr., Inc.*, No. 4:08cv103 (E.D. Va. filed Oct. 16, 2008); *Bland v. Linehaul Solutions, Inc.*, No. 1:08cv1146 (E.D. Va. filed Nov. 3, 2008); *Ramirez-Ramos v. Donna*, No. 1:09cv541 (E.D. Va. filed May 14, 2009). Defendants' counsel is also well-experienced in employment law and has litigated FLSA cases. As such, the Court concludes that counsel possessed sufficient knowledge of the applicable law and the procedures of this

Court, enabling them to evaluate the strength of their respective cases and provide competent legal advice.

> 5.   Amount of the Settlement in Relation to the Potential Recovery

The proposed settlement agreement requires Defendants to pay Plaintiffs $6,500 each to resolve all claims raised in this lawsuit.  Plaintiffs raise essentially three different claims:  (1) that certain payroll practices employed by Defendants failed to pay Plaintiffs the full amount of overtime due (the "technical violations claim"); (2) that Defendants maintained a blanket practice of recording and thus compensating only eight hours each day regardless of the actual number of hours worked (the "unpaid hours claim"); and that Plaintiff Medina Galvez's termination was retaliatory (the "retaliation claim").

To begin, Plaintiffs identified three technical violations in connection with Defendants' payroll practices that resulted in an underpayment of overtime.  First, Defendants failed to pay Plaintiffs overtime during weeks in which they worked more than five days for both Americlean entities.  For example, if in a given week an employee worked twenty-four hours for Americlean Services Corp. and thirty-five hours for Americlean Environmental Services (and hence fifty-nine hours total) that employee was not paid overtime as he or she should have under the FLSA.  Second, Defendants failed to calculate

6

overtime during weeks in which Plaintiffs worked both "commercial" and "residential" jobs. For commercial jobs, employees were paid at an hourly rate based on the number of hours worked whereas for residential jobs, employees were paid a flat rate. Defendants also did not record the number of hours worked on residential jobs. Thus, if an employee worked on both commercial and residential jobs for more than five days in a given week, that employee likely worked more than forty hours, but was not paid overtime. The number of hours an employee worked in such a week is not ascertainable, as the number of hours worked was not recorded for residential jobs, but Defendants made estimates based on the flat rate amount the employee was paid. Third, Defendants failed to adjust Plaintiffs' regular rate of pay for weeks in which they were paid performance bonuses and also worked overtime. Plaintiffs have provided payroll records exemplifying each of these violations. While the probability of Plaintiffs' success on their technical violations claim was very high, the violations occurred infrequently and resulted in modest damages. Plaintiffs' estimated recovery on this claim was $1,900 per Plaintiff, which, including an equal amount for liquidated damages, comes to $3,800.[2]

---

[2] Section 216 of the FLSA holds an employer who violates the provisions of § 206 or § 207 liable to the employee or employees affected in the amount of their unpaid overtime compensation or unpaid minimum wages and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

Turning to the unpaid hours claim, Plaintiffs contend that on various occasions, they worked more than eight hours per day on commercial jobs including compensable travel time.  They allege that Defendants, however, routinely paid employees eight hours per day, regardless of the actual number of hours worked. The parties vigorously dispute this claim.  Defendants recorded the time at which employees arrived at work and how many hours they worked each day, but not the time at which employees clocked out.  While Plaintiffs contended that they routinely worked more than eight hours per day, no evidence in the record supported their recollection of the time at which their workday ended.  Plaintiffs' counsel attempted to piece this information together by using gate records at various worksites or credit card receipts from gas stations, but to no avail.  Plaintiffs' success on this claim would have rested largely on the jury's evaluation of testimony at trial.  While Plaintiffs' coworkers had not been deposed at the time the settlement was reached, Plaintiffs' counsel spoke with many by telephone who were prepared to testify that they never worked any unpaid hours. Plaintiffs estimated that the probability of succeeding on their unpaid hours claim was roughly one-in-three.  They estimated that their maximum recovery on the claim was $2,100 per Plaintiff, or $4,200 including liquidated damages.[3]

---

[3] This figure was derived from Plaintiffs' estimate of two unpaid hours per week over a period of two years.  Plaintiffs therefore implicitly concede

In light of the foregoing, the Court concludes that the parties' settlement "reflects a reasonable compromise over issues actually in dispute." *See Lomascolo*, 2009 WL 3094955, at *8. Plaintiffs estimated that their maximum recovery on the technical violations claim and unpaid hours claim was $8,000. The settlement amount -- $6,500 for each Plaintiff -- amounts to 81.3 percent of their maximum recovery on these claims. Although Plaintiffs have agreed to a settlement which does not assign value to their retaliation claim, the decision to do so is not unreasonable given their failure to successfully advance this claim before two neutral factfinders: the Virginia Employment Commission and the NLRB.[4] Courts have recognized a role for less-than-full-value compromise in the FLSA settlement process. *See, e.g.*, *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57-58 (E.D.N.Y. 2010) (approving settlement of FLSA claims at thirteen to seventeen percent of maximum recovery). Such compromises reflect the "many factors [that] may be in play as the parties negotiate." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009). Here, Plaintiffs have

---

that they would have been unable to prove a willful FLSA violation, which would have extended the limitations period to three years. *See* 29 U.S.C. § 255(a).

[4] The Court need not engage in an in-depth review of the parties' settlement of the retaliation claim, provided its terms do not contaminate the settlement of claims relating to unpaid overtime and unpaid wages. *See Yost v. Wyndham Vacation Resorts, Inc.*, No. 10-cv-1583, 2012 WL 1165598, at *3 (M.D. Fla. Mar. 26, 2012), *report and recommendation adopted* 2012 WL 1165468 (M.D. Fla. Apr. 9, 2012); *cf. Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (noting the "nonwaivable nature of an individual employee's right to a *minimum wage and overtime pay* under the [FLSA]") (emphasis added).

9

attained a settlement which more than compensates them for their technical violations claims and compensates them for their unpaid hours claim at a rate commensurate with that claim's probability of success.  Accordingly, the Court concludes that the settlement in this case is fair and reasonable in relation to Plaintiffs' potential recovery.

B.  Attorneys' Fees

The proposed settlement agreement in this case prescribes an award of attorneys' fees in the amount of $21,450. "[T]he FLSA 'requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Poulin*, 2010 WL 1813497, at *1 (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)).  In calculating an award of attorneys' fees, the Court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended."  *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008).  The Court's assessment of reasonableness involves consideration of the following factors:

> (1)  the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount

in controversy and the results obtained; (9) the
experience, reputation and ability of the attorney;
(10) the undesirability of the case within the legal
community in which the suit arose; (11) the nature and
length of the professional relationship between
attorney and client; and (12) attorneys' fees awards
in similar cases.

*Barber v. Kimbrell's, Inc*., 577 F.2d 216, 226 n.28 (4th Cir.

1978).

A determination of the hourly rate is the critical

inquiry in setting the reasonable fee, and the burden rests with

the fee applicant to establish the reasonableness of a requested

rate.  *Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).  Here,

the Court finds the requested attorneys' fees reasonable under

*Kimbrell's*.  Plaintiffs' counsel, Simon Sandoval-Moshenberg,

attests that he and his co-counsel expended 151.3 hours

litigating this case, which included client meetings, creating a

discovery plan, responding to interrogatories, telephone calls

and meetings with witnesses, review of payroll records and other

documents, and the deposition of Richard de Azagra.[5]  (*See

generally* Pls.' Mem. [Dkt. 39] Ex. B ("Sandoval-Moshenberg

Decl.").)

Taking $21,450 in attorneys' fees and 151.3 as the

number of hours expended on this case yields an imputed hourly

rate of $141.77.  This Court has previously awarded Mr.

_____

[5] This figure is based on time spent up to and including April 30, 2012.  It
therefore excludes hours spent on the parties' initial motion for approval of
settlement and on Plaintiffs' memorandum of law submitted in connection with
the instant Motion.  The figure also excludes time spent by paralegals
organizing and cataloguing time records, which Plaintiffs estimate was at
least ten hours.

Sandoval-Moshenberg attorneys' fees in an FLSA case based on a $250 hourly rate.  *See Ramirez-Ramos v. Donna*, No. 1:09cv541 (E.D. Va. Mar. 22, 2010) (order granting plaintiffs' application for award of attorneys' fees and costs).  And, because Plaintiffs' co-counsel, Erin Trodden, has more experience than Mr. Sandoval-Moshenberg, she would ostensibly be able to bill her time at a higher rate.  The imputed hourly rate is also substantially below the $240 hourly rate for an attorney with one to three years of experience set forth in the Laffey Matrix.[6] Based on the foregoing, the Court finds that the imputed hourly rate is reasonable.

The other *Kimbrell's* factors also support the requested attorneys' fees.  While the legal questions in this case were not particularly novel, Plaintiffs' counsel engaged in a detailed factual inquiry.  The opportunity cost of litigating this case was also relatively high, as two attorneys invested a significant amount of time on behalf of two low wage workers unable to pay litigation costs.  The case was an undesirable one for this reason as well.  While the award of attorneys' fees

---

[6] The Laffey Matrix is used as a guideline for reasonable attorneys' fees in the Washington/Baltimore area.  *See United States ex rel. Thyssenkrupp Safway, Inc. v. Tessa Structures, LLC*, No. 1:10cv512, 2011 WL 2633902, at *6-7 & n.2 (E.D. Va. July 5, 2011) (using the Laffey Matrix as evidence of reasonableness).  The matrix is hosted on the website of the United States Attorney's Office for the District of Columbia.  *See* http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf.  The rates are adjusted for cost of living and are based on rates found reasonable in *Laffey v. Nw. Airlines*, 746 F.2d 4, 24-25 (D.C. Cir. 1984), *overruled in part on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988).

sought exceeds the recovery obtained by Plaintiffs, the Court is mindful that Plaintiffs were able to recover 81.3 percent of their maximum recovery.  *See Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005) (noting that the extent of relief obtained -- meaning the amount of damages sought to the amount awarded -- is of primary importance in all cases where a court is asked to award attorneys' fees).  Given the record in this case, there is no reason to believe Plaintiffs' recovery was adversely affected by the amount of attorneys' fees agreed upon by the parties.  In sum, the Court finds the parties' settlement, including the award of attorneys' fees, fair and reasonable.

### IV.  Conclusion

For these reasons, the Court will grant the parties' Motion.

An appropriate Order will issue.

_____
                                    /s/
June 29, 2012                  James C. Cacheris
Alexandria, Virginia     UNITED STATES DISTRICT COURT JUDGE